**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| ROBERT HILD, ) | CASE NO._2:21-CV-00108-BSJ_ |
| ) | Judge Bruce S. Jenkins |
| Plaintiff, ) | |
| ) | |
| v. ) | **INITIAL COMPLAINT** |
| ) | (Jury Trial Demanded) |
| UNITED SPORTS BRAND, SHOCK ) | |
| DOCTOR, INC. d/b/a SHOCK DOCTOR ) | |
| and DICK'S SPORTING GOODS, INC., ) | |
| d/b/a DICK'S SPORTING GOODS, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

COMES NOW, the above-named Plaintiff, ROBERT HILD, and against the

Defendants, UNITED SPORTS BRAND, SHOCK DOCTOR, INC., d/b/a SHOCK DOCTOR,

and DICK'S SPORTING GOODS, INC., d/b/a DICK'S SPORTING GOODS, as follows:

**NATURE OF THE CASE**

1.      This is an action for damages by Plaintiff Robert Hild ("Plaintiff") following

injuries he sustained beginning on or around April 13, 2019, when an athletic cup Plaintiff was

wearing during a sporting event, which was designed, produced, tested, marketed, manufactured,

and/or distributed by Defendant Shock Doctor, Inc. d/b/a Shock Doctor ("Defendant Shock

Doctor"), a wholly owned subsidiary of Defendant United Sports Brand, and Defendant Dick's

Sporting Goods, Inc., d/b/a Dick's Sporting Goods ("Defendant DSG"), failed to protect Plaintiff

from an oncoming lacrosse ball that struck Plaintiff in the groin, causing permanent and irreparable

harm.

2.      As set forth more fully in this complaint, Plaintiff alleges causes of action against

Defendants arising in strict product liability, warranty, contract and tort, related to Defendants'

actions, inactions and omissions associated with the design, manufacture, warnings, inspections, testing, investigations, marketing, development, and ultimate distribution of a defective athletic cup that was unreasonably dangerous for end users, including Plaintiff.

3.    Plaintiff pleads the following allegations and causes of action collectively and in the alternative, as Plaintiff need not elect among a remedy until a trial of this matter.

## PARTIES

4.    At all times relevant to this complaint, Plaintiff was a citizen and resident of Utah, and a student athlete at Brigham Young University, located in Utah County Utah.

5.    At all times relevant to this complaint, Defendant United Sports Brand has been a for-profit corporation organized and existing and with its global headquarters based in Fountain Valley, California, and the parent corporation and overseeing entity responsible for Defendant Shock Doctor. As the owner of brands that manufacture, produce, create, market and distribute athletic equipment including protective athletic gear, Defendant United Sports Brands has operated throughout the world and the United States[1], including in the state of Utah, and also sells its products through third party affiliates such as Defendant DSG.

6.    At all times relevant to this Complaint, Defendant United Sports Brand has held itself out as the exclusive owner of Defendant Shock Doctor, and has been responsible for and/or been critically involved in Defendant Shock Doctor's research and development, budgeting, training, marketing, production, buying, sourcing, packaging, manufacturing and distribution of its products, including the product at issue in this case. Upon information and belief, the control exercised by Defendant United Sports Brand over Defendant Shock Doctor has included, but has

---

[1]    *See* https://www.unitedspb.com/about-us. (Last visited February 23, 2021).

2

not been limited to responding to reports and reviews of the product Plaintiff was wearing at the time of Plaintiff's injuries.

7.    At all times relevant to this Complaint, Defendant Shock Doctor has been a wholly owned subsidiary and/or affiliate of Defendant United Sports Brand, and has been a corporation organized and existing pursuant to Delaware law, with a principal place of business in Fountain Valley, California, and has been engaged in the creation, production, manufacture, development, testing, inspection, marketing, and/or distribution of athletic gear and equipment including gear marketed for the express purpose of providing bodily protection to athletes in areas such as the head, mouth, neck, and, for purposes of this Complaint, the groin. In fact, Defendant United Sports Brand has marketed itself as "a leader in sports protection and performance around the world," and has stated: "Shock Doctor products are worn by hundreds of professional and college athletes and available [sic] in more than 10,000 retail locations."[2]

8.    At all times relevant to this Complaint, Defendant Shock Doctor has conducted business globally, and throughout the United States, availing itself of the laws of jurisdictions throughout the United States, including Utah, where Defendant Shock Doctor marketed, and/or distributed its products through dozens of third-party retailers.

9.    At all times relevant to this Complaint, Defendant DSG, has been a corporation organized and existing pursuant to the laws of Delaware, with a principal place of business in Coraopolis, Pennsylvania, and primary places of business throughout the United States, including in the state of Utah where it currently has four retail stores.

10.    As set forth herein and at all times relevant to this Complaint, Defendant DSG has been engaged in the sale, marketing, promotion, and/or distribution of protective athletic

---

[2] http://www.shockdoctor.com/pages/about-shock-doctor (last visited February 23, 2021).

equipment, and has promoted this equipment as safe and efficacious for its regular and intended use, including protecting the groin area.

11.     At issue in this case is the failure of a protective athletic device Plaintiff was wearing on the night of April 13, 2019, designed, tested, inspected, manufactured, labeled, promoted, marketed, sold and/or distributed by Defendants.

12.     Upon information and belief, the actions, inactions, and/or omissions of Defendants, described in this complaint, were all perpetrated by the employees, agents, assigns, and/or authorized representatives of Defendants, acting in the course and scope of their employment, authority and/or agency.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000 and complete diversity exists among the parties.

14.     Venue is proper before this Court as a substantial portion of the acts, omissions, and failures complained of occurred in this district, a majority of the lay witnesses live, reside and/or are readily available in this district, and Defendants have availed themselves of the laws of Utah, and, by their conduct, have sufficient minimum contacts with this district, including transacting business in this district, and creating, designing, producing, labeling, promoting, marketing, manufacturing, and/or distributing products in this district.

15.     At all times relevant to this Complaint, Defendants had continuing, systemic, and pervasive contacts within this state, and this judicial district, sufficient for this Court to exercise its jurisdiction over Defendants.

16.     Jurisdiction and venue are therefore proper before this Court.

## FACTUAL ALLEGATIONS

17.     Plaintiff repeats the preceding paragraphs as though repeated verbatim herein.

18.     On or around April 13, 2019, Plaintiff was warming up for a college lacrosse game on behalf of his school, Brigham Young University.

19.     Due to the nature of lacrosse, players are at risk for being struck by a lacrosse ball in sensitive areas, including the head, neck, mouth, and groin.

20.     Because of this risk of injury from an oncoming ball, companies have undertaken to design, manufacture, produce, and/or distribute protective athletic equipment, including protective athletic cups, whose very function is to prevent injury to the groin area.

21.     Defendants Shock Doctor and DSG are among the companies that produce, create, promote, manufacture, and/or distribute protective athletic cups.

22.     In or around 2004, Defendant Shock Doctor began to market, sell, and promote a new athletic cup they called the Bioflex Cup ("the Bioflex Product").

23.     According to Defendants, the BioFlex Product was intended to provide superior protection, "transferring shock and impacts of up to 100 mph away from the body."[3]

---

[3] *See* https://www.amazon.com/Shock-Doctor-Compression-Shorts-Medium/dp/B01H6JGLWI/ref=sr_1_18?crid=27F7DRT8HNQ7E&dchild=1&keywords=shock%2Bdoctor%2Bcup&qid=1609285775&s=sporting-goods&sprefix=shock%2Bdoctor%2B%2Csporting%2C179&sr=1-18&th=1; *see also* *https://www.dickssportinggoods.com/p/shock-doctor-adult-core-compression-short-with-bioflex-cup-16skracrcmpwbfxcpspmx/16skracrcmpwbfxcpspmx?sku=14060788&camp=CSE:DSG_92700048924094927_pla_pla-4582420873094032&msclkid=e2b25f454ce8145a7ee300ae8da286f4&gclid=e2b25f454ce8145a7ee300ae8da286f4&gclsrc=3p.ds* ("The Shock Doctor Core Compression Short with Bioflex Cup was designed with the X-Fit cup retention system, which integrates a wraparound external supporter for unparalleled comfort, fit and protection.") (Last visited February 23, 2021).

24.     The Bioflex Product was specifically marketed by Defendants for use in sports, including lacrosse, where protection of the groin is especially important.[4]

25.     Upon information and belief, Defendants failed to include any warning for the Bioflex Product in their marketing, labeling, and/or product information, or, to the extent a warning existed, the warning failed to specifically identify the risks associated with the Bioflex Product, including that the product's structural integrity would not withstand a direct impact, was indiscernible or difficult find, and was otherwise insufficient.

26.     Yet, at all times relevant to this Complaint, and upon information and belief, Defendants were aware, or had reason to know of dozens if not hundreds of complaints related to the Bioflex Product, including complaints about its structural failure upon impact, its sizing, and its fit, and reports that the cup shifted away from the athlete's body with even minimal movement.

27.     For example:

a.  If you're playing baseball or softball as I do, the whole point of the cup is to protect your sensitive parts from being smashed by a ball while fielding, but if you bend, squat, kneel whatever to field, the cup rises up leaving your sensitive parts to get smooshed, if not directly, then by the risen up cup itself, sure it still covers some maybe even most, but to move out of place at all can have serious consequences from a hard impact, this only stays put when standing upright, what's the point?

Review, "Not for Baseball" Kindle Customer, February 5, 2018.[5]

b.  Keeping this product because I love the shorts, and I wear my new cup over them (in a jock, I don't use the sleeve at all). The Shock Doctor Bioflex cup is stupid in my opinion. Firstly, it's too small. I cannot pack myself into it when holding it, let alone if I'm doing physical activity Secondly, even if it were big enough, the shape

---

[4] *See* https://www.amazon.com/Shock-Doctor-Compression-Short-Bio-Flex/dp/B00181ERVI/ref=sr_1_5?crid=F75CLMB1PDQ0&dchild=1&keywords=shock%2Bdoctor%2Bcup&qid=1609275969&sprefix=shock%2Bdo%2Caps%2C176&sr=8-5&th=1 ("PERFECT FOR – Sports where protecting that area is important! Baseball, Hockey, Softball, Lacrosse, Football, Soccer goalies, Cricket, MMA and more.") (Last visited February 23, 2021).
[5] *See* https://www.amazon.com/product-reviews/B08BHKR7YS/ref=acr_dp_hist_2?ie=UTF8&filterByStar=two_star&reviewerType=all_reviews#reviews-filter-bar (last visited February 23, 2021).

makes no sense. It is way too thin where the testicles are. It's too much of a risk that they will be caught outside during impact…

Review, "Shorts Great, cup bad," Eric, November 28, 2013.[6]

c.  I received these yesterday, and used it last night. The shorts are great on their own. The cup on the other hand…would not stay in place and was constantly pinching. It is very narrow at the bottom, and pushes everything to the sides. I should have read the reviews first.

Review, "The Shorts are Great on their own," Jeremy, August 22, 2013.

28.     Defendant United Sports Brand would respond to certain of these reviews. For instance:

…We appreciate your…feedback regarding your experience with our Shock Doctor Core Compression Short w/ Bio-Flex Cup. **We are sorry to hear that our product is not offering complete protection as needed for you**. Please contact our customer service department via email – cs@unitedspd.com or by phone at (800) 233-6956 and we will gladly work with you to make this right!

(Emphasis added). Manufacturer Comment to Review, "Not for Baseball."

29.     Yet, despite knowledge of these reviews, and Defendant United Sports Brand's offer to "make this right," upon information and belief, Defendants never incorporated these reviews and complaints into a warning for the Bioflex Product, nor was the product fixed or corrected.

30.     On April 13, 2019, Plaintiff was warming up for a lacrosse game, and was at his position at goalie.

31.     Before warm-ups, and as was the staff's pattern and practice, the lacrosse athletic staff checked Plaintiff's athletic equipment, including Plaintiff's athletic cup, to ensure the equipment was being used properly, and was in place.

---

[6] *Id.*

32.    Upon information and belief, the athletic staff noted no issues with the placement of the Bioflex Product, or Plaintiff's use of the product.

33.    Therefore, at the time of this incident, Plaintiff was properly wearing the Bioflex Product, with the intention of using it for a purpose expressly contemplated by Defendants.

34.    In addition, at the time of this incident, the Bioflex Product was in substantially the same condition as when it left Defendants' possession. Plaintiff had not altered the product in any way, and was using it for a purpose contemplated by Defendants.

35.    As Plaintiff warmed up for his game, a teammate shot a lacrosse ball in Plaintiff's direction, striking Plaintiff in the groin.

36.    Plaintiff's cup failed, and he immediately experienced excruciating pain and significant swelling.

37.    He was taken for emergency medical care, and, within several days of this incident, underwent surgical removal of the affected testicle.

38.    Plaintiff's injury will impact him for the rest of his life, including disfigurement, and a potential impact on Plaintiff's future ability to have children.

39.    At the time of this incident, and, upon information and belief, Defendants knew or should have known that the Bioflex Product was unreasonably dangerous, and that Defendants' representations related to the Bioflex Product were unsupported.

40.    In fact, at the time of this incident Defendants knew or should have known that the Bioflex Product provided inadequate protection for athletes, and was not fit for its intended use.

41.    Despite Defendants' knowledge regarding the inadequacy of the Bioflex Product, as well as the falsity, or untested nature of Defendants' representations related to the product's

efficacy, at all times relevant to this Complaint, Defendants continued to promote and introduce the Bioflex Product into the marketplace for use, including by college athletes like Plaintiff.

42.     At the time of this incident, Defendants' Bioflex Product failed, and this failure, and Defendants acts and/or omissions related to this failure, directly and proximately caused significant and permanent harm to Plaintiff.

## COUNT I: STRICT PRODUCT LIABILITY
### (FAILURE TO WARN)

43.     Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

44.     At all times relevant to this complaint, Defendants were responsible for the manufacture, testing, inspection, creation, promotion, packaging, labeling, production and/or distribution of the Bioflex Product, which was intended to provide protection to the groin area of athletes like Plaintiff.

45.     As a matter of law, and in addition to a number of additional failures enunciated in this complaint, Defendants' Bioflex Product, which Plaintiff was wearing at the time of his injuries, was unreasonably dangerous for its intended use and was defective due to Defendants' lack of appropriate, necessary, and minimally adequate warnings on the product, including warnings related to reports of adverse events, and issues related to structural failure upon impact, fit, and slippage while engaged in athletic activity.

46.     More specifically, Defendants failed to warn end users that the Bioflex Product design was potentially improper, that it provided no benefit over other more economical alternatives, and was in fact less effective than other available alternatives, and/or that the Bioflex Product would not safely withstand the promised impact speed nor remain in place during movement including running, bending, and squatting, among other particulars.

47.     Upon information and belief, the failure of Defendants to include any warning(s) related to the Bioflex Product, including warnings related to reports that the product would not safely withstand the promised impact speed nor remain in place during athletic activity, which was information known or reasonably available to Defendants, rendered the Bioflex Product unreasonably dangerous, and posed a significant risk of harm or injury to users including Plaintiff.

48.     As a direct and proximate result of Defendants' product(s) defects, including the failure to include sufficient product warnings, Plaintiff sustained significant physical, mental and emotional injury, including permanent disfigurement, and has required extensive medical care and will likely require future surgical and/or interventional care, has suffered financial and/or economic losses, including those associated with medical services, along with other incidental, consequential, and actual damages.

49.     Defendants are strictly liable to Plaintiff for their design, manufacture, marketing, labeling, packaging, and sale of a defective and unreasonably dangerous product.

50.     Defendants are further strictly liable for failing to adequately warn Plaintiff regarding the dangers of the Bioflex Product, which Defendants knew or should have known at the time Defendants designed, manufactured, inspected, tested, labeled, packaged, marketed, and/or distributed and sold the Bioflex Product.

51.     Plaintiff now seeks judgment against Defendants, and for such compensatory, actual incidental, and/or punitive damages, including pre and post judgment interest, attorney's fees and costs if/where applicable, and for such additional relief in law or equity as the Court deems just and proper.

## COUNT II: STRICT PRODUCT LIABILITY
### (DEFECTIVE DESIGN)

52.     Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

53. As set forth in this Complaint, at the time Defendants sold the Bioflex Product to Plaintiff, the product was defective and unreasonably dangerous for its intended uses as designed. These defects include but are not limited to:

    a. The propensity of the Bioflex Product to slip rather than remaining in place;

    b. The improper fit associated with the Bioflex Product;

    c. The propensity of the Bioflex Product to expose sensitive and vulnerable body parts rather than remaining in place during use;

    d. The inability of the Bioflex Product to withstand impact;

    e. The propensity of the Bioflex Product to suffer structural failure upon impact;

    f. The failure of the Bioflex Product to work appropriately as a unit with the compression shorts included in its packaging;

    g. The use and design of an unproven and unsupported interlocking cup feature;

    h. The use and design of an unproven and unsupported vented bio-shape design, providing inadequate protection; and

    i. Such other design defects as may be revealed.

54. The Bioflex Product was unreasonably safe for its intended uses and was defective as a matter of law, as illustrated by the product's failure when Plaintiff was struck in the groin by an oncoming lacrosse ball.

55. Upon information and belief, the design of the Bioflex Product posed unreasonable risks of harm and serious bodily injury to end-users, including Plaintiff.

56. As a direct and proximate result of the Bioflex Product's defective design, described in this Complaint, Plaintiff sustained significant physical, mental and emotional injury, including permanent disfigurement, and has required extensive medical care and will likely require

future surgical and/or interventional care, has suffered financial and/or economic losses, including those associated with medical services, along with other incidental, consequential, and actual damages incurred.

57.     Defendants are strictly liable to Plaintiff for their design, manufacture, marketing, labeling, packaging, and sale of a defective and unreasonably dangerous product.

58.     Plaintiff now seeks judgment against Defendants, and for such compensatory, actual incidental, and/or punitive damages, including pre and post judgment interest, attorney's fees and costs if/where applicable, and for such additional relief in law or equity as the Court deems just and proper.

## COUNT III: STRICT PRODUCT LIABILITY
### (DEFECTIVE MANUFACTURING)

59.     Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

60.     As set forth in this Complaint, at the time Defendants sold the Bioflex Product to Plaintiff, the product was defective and unreasonably dangerous for its intended uses as manufactured. These defects include but are not limited to:

    a. The deviation of the Bioflex Product as manufactured from its design specifications and/or standards;

    b. The improper fit of the Bioflex Product, as manufactured;

    c. The propensity of the Bioflex Product, as manufactured, to slip out of place despite being worn properly;

    d. The propensity of the BioFlex Product to suffer structural failure upon impact;

    e. The propensity of the Bioflex Product's interlocking feature, as manufactured, to fail;

      f.   The propensity of the Bioflex Product's bio-shape, as manufactured, to move from its intended position, rendering the product unreasonably dangerous;

      g.   Such other manufacturing defects as may be revealed.

61.     The Bioflex Product was unreasonably dangerous for its intended uses and was defective as a matter of law, as illustrated by the product's failure when Plaintiff was struck in the groin by an oncoming lacrosse ball.

62.     Upon information and belief, the manufacture of the Bioflex Product posed unreasonable risks of harm and serious bodily injury to end-users, like the Plaintiff.

63.     As a direct and proximate result of the Defendants' defective manufacturing of the Bioflex Product, described in this Complaint, Plaintiff sustained significant physical, mental and emotional injury, including permanent disfigurement, and has required extensive medical care and will likely require future surgical and/or interventional care, has suffered financial and/or economic losses, including those associated with medical services, along with other incidental, consequential, and actual damages incurred.

64.     Defendants are strictly liable to Plaintiff for their design, manufacture, marketing, labeling, packaging, and sale of a defective and unreasonably dangerous product.

65.     Plaintiff now seeks judgment against Defendants, and for such compensatory, actual incidental, and/or punitive damages, including pre and post judgment interest, attorney's fees and costs if/where applicable, and for such additional relief in law or equity as the Court deems just and proper.

## COUNT IV: STRICT LIABILITY
### (BREACH OF EXPRESS WARRANTY)

66.     Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

67. By and through their marketing, labeling, packaging, and/or promotional materials related to the Bioflex Product, Defendants represented to the general public, and to specific end users including Plaintiff, that the Bioflex Product was safe and efficacious for its intended use of protecting the sensitive groin area from injury.

68. Upon information and belief, Plaintiff's selection and use of the Bioflex Product was based upon Defendants' assurances of safety and fitness for the product's intended use, along with all other warranties and/or representations made by Defendants.

69. Plaintiff reasonably relied upon Defendants' assurances and/or express warranties, representations, and guarantees that the Bioflex Product was safe, merchantable, and reasonably fit for its intended and advertised purpose.

70. Defendants breached these express warranties, guarantees, and/or assurances of safety and fitness for the Bioflex Product's intended and ordinary use by placing an unreasonably dangerous and/or defective product into the stream of commerce for purchase by end users, including Plaintiff, all while knowing that the Bioflex Product had a propensity for structural failure upon impact, and for slippage and movement.

71. As a direct and proximate result of Defendants' breach of express warranties, described in this Complaint, Plaintiff sustained significant physical, mental and emotional injury, including permanent disfigurement, and has required extensive medical care and will likely require future surgical and/or interventional care, has suffered financial and/or economic losses, including those associated with medical services, along with other incidental, consequential, and actual damages incurred.

72. Plaintiff now seeks judgment against Defendants, and for such compensatory, actual incidental, and/or punitive damages, including pre and post judgment interest, attorney's

fees and costs if/where applicable, and for such additional relief in law or equity as the Court deems just and proper.

## COUNT V: BREACH OF IMPLIED WARRANTY

73.     Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

74.     At all times relevant to this Complaint, Defendants have impliedly warranted that the Bioflex Product was merchantable and fit for its ordinary purpose (i.e. protection of the groin area of athletes engaged in sports and athletic competition).

75.     At the time of this incident on April 13, 2019, Plaintiff was warming up for a lacrosse game, and was wearing the Bioflex Product for its intended use.

76.     At the time of this incident, Plaintiff relied upon Defendants' implied assurances that its product would work as intended, and would adequately protect Plaintiff from injury to his groin.

77.     Defendants breached this implied warranty that the Bioflex Product was merchantable, and every other implied warranty, because the product failed, and was unreasonably dangerous, and Defendants knew or should have known that the product had a propensity for structural failure upon impact, and for ill-fit, slippage and movement.

78.     The result of Defendants' breaches of warranty was to expose Plaintiff to an unreasonably dangerous product likely to cause Plaintiff significant and permanent bodily harm.

79.     As a direct and proximate result of Defendants' breach of implied warranties, described in this Complaint, Plaintiff sustained significant physical, mental and emotional injury, including permanent disfigurement, and has required extensive medical care and will likely require future surgical and/or interventional care, has suffered financial and/or economic losses, including

those associated with medical services, along with other incidental, consequential, and actual damages incurred.

80.    Plaintiff now seeks judgment against Defendants, and for such compensatory, actual incidental, and/or punitive damages, including pre and post judgment interest, attorney's fees and costs if/where applicable, and for such additional relief in law or equity as the Court deems just and proper.

## COUNT VI: NEGLIGENCE/GROSS NEGLIGENCE

81.    Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

82.    At all times relevant to this Complaint, Defendants had a duty to end users of their product(s), including Plaintiff, to use due and reasonable care in designing, researching, manufacturing, marketing, labeling, packaging, supplying, distributing, and selling products, including the Bioflex Product.

83.    Defendants were negligent and/or grossly negligent by failing to use due and reasonable care in designing, manufacturing, marketing, labeling, packaging, testing, inspecting, and/or selling the Bioflex Product in one or more of the following particulars:

    a.    Failing to design the Bioflex Product to avoid the risk of unreasonable danger and/or harm to end users, such as Plaintiff, who used the product properly and as intended;

    b.    Failing to manufacture the Bioflex Product consistent with specifications to avoid the risk of unreasonable danger and/or harm to end users, such as Plaintiff, who used the product properly and as intended;

    c.    Failing to use reasonable care in marketing, packaging, and/or labeling the Bioflex Product to advise end users, including Plaintiff, of the potential for structural failure

upon impact, slippage, movement, lack of fit, and resultant harm associated with the Bioflex Product;

d.  Distributing the Bioflex Product despite actual and/or constructive knowledge that the product failed to operate as intended, and exposed end users to an unreasonably dangerous risk of harm;

e.  Favoring the Bioflex Product over other more economical and safer alternatives, despite actual and/or constructive knowledge that the product failed to operate as intended, and exposed end users to an unreasonably dangerous risk of harm;

f.  Failing to appropriately affix warnings to the Bioflex Product related to the product's propensity for structural failure upon impact, slippage, ill fit, and movement during routine and ordinary use, resulting in unreasonable risk of harm to the end user;

g.  Failing to engage in post-market due diligence related to the Bioflex Product, including monitoring, and/or acting on available reports, consumer complaints, and/or scientific information related to the Bioflex Product;

h.  Otherwise negligently and/or carelessly designing, manufacturing, packaging, and/or distributing the Bioflex Product with the intent and knowledge that the product would be worn by end users in the exact manner described in this Complaint, and that this created an unreasonable risk of harm to end users;

i.  Such other duties and responsibilities as may be determined during discovery and/or a trial of this matter.

84.  Defendants' conduct, described in this complaint, constitutes the complete absence of care.

85.     As a direct and proximate result of Defendants' negligence and/or gross negligence related to the Bioflex Product, described in this Complaint, Plaintiff sustained significant physical, mental and emotional injury, including permanent disfigurement, and has required extensive medical care and will likely require future surgical and/or interventional care, has suffered financial and/or economic losses, including those associated with medical services, along with other incidental, consequential, and actual damages incurred.

86.     Plaintiff now seeks judgment against Defendants, and for such compensatory, actual incidental, and/or punitive damages, including pre and post judgment interest, attorney's fees and costs if/where applicable, and for such additional relief in law or equity as the Court deems just and proper.

### COUNT VII: VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT
### (Utah Code. Ann. § 13-11-1, *et seq.*)

87.     Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

88.     Plaintiff purchased and used Defendants' Bioflex Product, and suffered severe, tangible losses as a direct result of Defendants' actions in designing, marketing, developing, labeling, packaging, marketing, and/or distributing this defective and unreasonably dangerous product.

89.     Utah Code Ann. § 13-11-4 prohibits suppliers from engaging in deceptive acts and/or practices in connection with consumer transactions, including but not limited to indicating that the consumer transaction adheres to or is of a particular standard, quality, grade, style, or model, or fails to honor a warranty of a particular item.

90.     For purposes of this Complaint, Defendants constitute "suppliers" under the Utah Code of Laws, Plaintiff is a "person," and the interaction resulting in Plaintiff's use of the Bioflex Product constitutes a "consumer transaction."

91.     As set forth above, at all times relevant to this Complaint, Defendants knew or should have known that the Bioflex Product was unreasonably dangerous for its intended use, including by and through product reports, complaints, testing, inspections, and other available information related to the product.

92.     As set forth above, at all times relevant to this Complaint, despite constructive and/or actual knowledge that the Bioflex Product was unreasonably dangerous, and could result in significant and irreparable injury to end users, such as Plaintiff, Defendants nevertheless continued to market and distribute the Bioflex Product as safe and efficacious, and did not notify prospective purchasers about reports of incidences and injuries.

93.     As set forth above, Defendants knew or should have known that the absence of appropriate warnings and information related to the Bioflex Product would prohibit end users from meaningful decision making related to whether to purchase the product or an available alternative.

94.     The actions and/or inactions of Defendants related to the Bioflex Product constitute unconscionable practices for purposes of the Utah Consumer Sales Practices Act.

95.     Had Defendants refrained from these unconscionable practices, Plaintiff would not have purchased and used the Bioflex Product on the date of this incident.

96.     Plaintiff in fact used the Bioflex Product and was injured when he was struck directly in the groin, and the product failed.

97.     At all times relevant to this Complaint, Defendants had a duty, as codified by statute, to refrain from unconscionable and/or deceptive practices in consumer transactions.

98.     Defendants' conduct, as set forth in this Complaint, violated Defendants' duty to refrain from unconscionable and/or deceptive consumer practices.

99.     As a direct and proximate result of Defendants' unconscionable consumer transaction practices related to the Bioflex Product,  Plaintiff sustained significant physical, mental and emotional injury, including permanent disfigurement, and has required extensive medical care and will likely require future surgical and/or interventional care, has suffered financial and/or economic losses, including those associated with medical services, along with other incidental, consequential, and actual damages incurred.

100.     Plaintiff now seeks judgment against Defendants, for actual damages, and penalties, plus all court costs, interest, reasonable attorney's fees, and such other relief as provided by statute.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff now prays for judgment against Defendants, and requests damages including the following:

1.  Compensatory, actual, and incidental damages, including the costs of medical care, both past, present, and future, and ascertainable past, present and future losses,

2.  Consequential damages, pain and suffering, loss of use and enjoyment, damages for emotional distress and embarrassment, and/or psychological harm;

3.  Ascertainable economic damages;

4.  Punitive damages;

5.  Pre and post judgment interest;

6.  Reasonable attorney's fees and costs; and

7.  All such additional damages and relief in law, or equity as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted on this 23rd day of February, 2021.

_s/ Matthew Schmoldt_
Matthew Schmoldt, Esq. (UT Bar #16562)
Creekside Legal, PLLC
2072 N. Main Street, Suite 203
Logan, UT 84341
Phone: (435) 799-3795
Facsimile: (435) 265-3379
Email: matt@creeksidelegal.com